MARK K. SCHONFELD
Regional Director
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center – Room 400
New York, New York 10281-1022
(212) 336-0175 (Szczepanik)

**07 CIV 8385**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

- against-

MORRIS GAD AND NATHAN ROSENBLATT,

    Defendants.
------------------------------------------------------------x

07 Civ.    (    )

COMPLAINT



Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against Defendants Morris Gad ("Gad") and Nathan Rosenblatt ("Rosenblatt") (collectively the "Defendants"), alleges as follows:

## SUMMARY

1. The Commission charges Defendants with illegal insider trading in the securities of NBTY, Inc. ("NBTY"), a distributor of nutritional supplements. In July 2004, Rosenblatt, a director of NBTY and member of its audit committee, tipped his close friend Gad with inside information about the company's significant revenue and earnings shortfall for its third quarter of 2004.

2. NBTY's financial results for its third quarter, which Rosenblatt received on July 20, 2004, were scheduled to be released to the public after the close of the market on July 22,

2004. The results showed a 12% decline in net income from the previous year's third quarter, as well as a decline in earnings per share to $.37 from the previous year's third quarter earnings per share of $.43. This number was significantly lower than Wall Street's earnings per share estimate of $.50.

3. On July 21, 2004, Rosenblatt and Gad placed several telephone calls to each other. Within moments of the last telephone call, Gad called his broker and quickly placed a large bet that the price of NBTY stock would soon decline.

4. Specifically, during the two days prior to the company's public announcement of the financial results, Gad sold his entire position of 13,920 NBTY shares, sold short 40,000 NBTY shares, and purchased 200 NBTY put contracts. Gad also sold a total of 105 NBTY call contracts from the accounts of his three children. These transactions created a significant risk of substantial losses to Gad if the price of NBTY stock were to rise rather than decline.

5. On July 22, 2004, NBTY's stock price closed at $24.50 per share. As scheduled, NBTY announced its financial results for the 2004 third quarter after the market closed. The following day, July 23, 2004, the stock closed at $19.68 per share, down 20% from the prior day's closing.

6. By engaging in insider trading before the public disclosure of NBTY's disappointing financial results, Gad made trading profits and avoided losses of approximately $400,000.

7. Both Gad and Rosenblatt invoked their Fifth Amendment privilege against self incrimination and declined to testify during the Commission's investigation into this matter.

8. By the conduct alleged herein, including Rosenblatt's tipping and Gad's trading, the Defendants have engaged, directly or indirectly, in transactions, acts, practices, or courses of

business that constitute violations of Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a), Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5. Absent permanent injunctions and other relief sought in this complaint, the Defendants will continue to engage in the transactions, acts, practices and courses of business set forth in this Complaint and in transactions, acts, practices and courses of business of similar type and object.

## JURISDICTION AND VENUE

9. The Commission brings this action pursuant to the authority conferred upon it by Section 20(b) of the Securities Act, 15 U.S.C. § 77t(b), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d), for permanent injunctive relief against the Defendants, from engaging in the transactions, acts, practices, and courses of business alleged in this Complaint, and for civil penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

10. The Commission also brings this action pursuant to Section 21A of the Exchange Act, 15 U.S.C. § 78u-1, for civil penalties against the Defendants under the Insider Trading and Securities Fraud Enforcement Act of 1988.

11. In addition, pursuant to Section 20(e) of the Securities Act, 15 U.S.C. § 77t(e), and Section 21(d)(2) of the Exchange Act, 15 U.S.C. § 78u(d)(2), the Commission seeks an order barring Rosenblatt from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act, 15 U.S.C. § 78l, or that is required to file reports pursuant to Section 15(d) of the Exchange Act, 15 U.S.C. § 78o(d). Pursuant to Section 21(d)(5) of the Exchange Act, 15 U.S.C. § 78(u)(d)(5), the Commission further seeks such other relief as the Court may deem appropriate or necessary.

12. The Defendants, directly and indirectly, singly or in concert, made use of the means or instruments of transportation or communication in, or the means or instrumentalities of, interstate commerce, or of the mails, or of a facility of a national securities exchange, in connection with the transactions, acts, practices, and courses of business alleged herein.

13. Certain of the alleged transactions, acts, practices, and courses of business occurred in the Southern District of New York, including, but not limited to, the execution of certain of the NBTY trades on the New York Stock Exchange ("NYSE").

14. Moreover, as detailed below, Rosenblatt's tipping of material, nonpublic information to Gad occurred during telephone conversations between them, as well as during a social evening over dinner, in Manhattan.

15. Accordingly, this Court has jurisdiction over this action, and venue is proper in this district, pursuant to Sections 20(b) and 22(a) of the Securities Act, 15 U.S.C. §§ 77(b), 77v(a), and Sections 21(d), 21(a), and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d), 78u-1(a), 78aa.

## DEFENDANTS

16. Gad is 45 years old and resides in Great Neck, New York. He is an officer and principal shareholder of Almod Diamonds, Ltd., a family-owned jewelry retailer that operates stores throughout the Caribbean and has its headquarters in Manhattan. Gad and Rosenblatt have been good friends for many years. They live close to each other, speak to and see each other frequently, and vacation together with their families.

17. Rosenblatt is 50 years old and resides in Great Neck, New York. Rosenblatt was at all relevant times a director of NBTY and a member of its three-person audit committee. He is the president and chief executive officer of Ashland Maintenance Corp., a commercial maintenance organization located in Long Island City, New York.

**RELEVANT ENTITY**

18. NBTY is a Delaware corporation headquartered in Bohemia, New York. It develops, markets and distributes nutritional supplements worldwide under several brand names, including Nature's World and Rexall. NBTY's securities are registered with the Commission pursuant to Section 12(b) of the Exchange Act, 15 U.S.C. § 78l(b), and are traded on the NYSE. NBTY's options are traded on the Philadelphia Stock Exchange.

**FACTS**

**NBTY'S 2004 THIRD QUARTER ANNOUNCEMENT OF FINANCIAL RESULTS**

19. NBTY's third quarter closed on June 30, 2004. Between July 1 and July 14, 2004, NBTY staff began gathering information and preparing preliminary earnings and financial statements for NBTY's third quarter.

20. On July 20, 2004, at 3:17 p.m., NBTY's chief financial officer ("CFO"), faxed the members of the audit committee, including Rosenblatt, a reminder that a telephonic meeting of the audit committee would take place on July 21 at 11:00 a.m. The CFO attached for the audit committee's review the actual financial results for NBTY's 2004 third quarter.

21. On July 20, 2004, at 6:04 p.m., the CFO faxed a draft press release concerning the 2004 third quarter financial results to the members of the audit committee, including Rosenblatt, for their approval.

22. The financial results showed a 12% decline in NBTY's net income, from $29.5 million in the previous year's third quarter to $25.9 million, as well as a slump in its U.S. retail and catalogue sales. They also showed earnings per share of $.37, down from $.43 in the previous year's third quarter. Though sales in the wholesale division increased by 83% from the

previous year's third quarter, profits for the division actually decreased by 5%. NBTY's revenues were below analysts already lowered expectations.

23.     On July 21, 2004, the audit committee members met at 11:00 a.m. for an hour and approved the financial results and the press release.

24.     On July 22, 2004, the company announced its third quarter results after the close of trading.

25.     The following day, on July 23, 2004, the price of the stock dropped to a new 52-week low, to close at $19.68 per share, down 20% from the prior day's close of $24.50 per share. Trading volume that day jumped to over 8.5 million shares from the previous day's volume of under one million shares.

## THE ILLEGAL CONDUCT

### Rosenblatt Tipped Gad About NBTY's Third Quarter Financial Results

26.     As part of NBTY's corporate policy, officers and directors who are aware of material, nonpublic information relating to the company are prohibited from trading NBTY securities or disclosing such information to outsiders.

27.     Rosenblatt had certified that he was aware of the company's insider trading policy and that he had complied and would continue to comply with it.

28.     Gad knew that Rosenblatt was a director of NBTY, and he knew or recklessly disregarded that Rosenblatt owed a duty to keep confidential material, nonpublic information about the company.

29.     As noted above, by no later than the afternoon of July 20, 2004, Rosenblatt possessed the actual financial results for the third quarter of 2004, which reflected the lower sales figures for two of the four divisions and the earnings decline. He also had a copy of the press release that the company intended to issue.

30.     The following morning, July 21, 2004, at 8:57 a.m., prior to that day's scheduled audit committee meeting, Gad called Rosenblatt. Within the next hour, Rosenblatt placed three calls to Gad, the last of which was at 9:59 a.m. and lasted 3 minutes.

31.     At 11:00 a.m. on July 21, 2004, the audit committee had a one-hour telephonic conference, during which it approved the issuance of the financial results in the form of the press release previously circulated. At 11:29 a.m. and again at 12:50 p.m., Gad placed calls to Rosenblatt. Two minutes after the second call, at 12:52 p.m., Gad called his broker.

32.     During these communications between Gad and Rosenblatt, and possibly other communications, Rosenblatt intentionally or recklessly, for his own direct or indirect benefit, and in breach of his fiduciary duty to NBTY, conveyed, in words or in substance, the material, nonpublic information about NBTY's 2004 third quarter financial results to his close friend Gad. Some or all of these communications took place while Gad was at his offices in Manhattan.

**Gad Sold His Entire Position of NBTY Stock, Sold NBTY Stock Short, Purchased NBTY Put Contracts, and Sold NBTY Call Contracts From His Children's Custodial Accounts.**

33.     On July 21, 2004, beginning at 12:59 p.m., Gad sold his entire position of 13,920 NBTY shares at prices between $24.86 and $25 per share. Thereafter, beginning at 2:20 p.m., Gad sold short 30,000 NBTY shares at prices between $24.75 and $24.86 per share. At 2:32 p.m. he purchased 50 August 30 put contracts at $5.40 per contract.

34.     Gad also directed the sales of 35 August 20 call contracts out of each of the accounts of his three children at $4.50 per contract on that day.

35.     Later that evening, Gad and Rosenblatt spent the evening together at a small dinner party to celebrate the birthday of a mutual friend.

36.     The next morning, July 22, 2004, at 10:47 a.m., Gad attempted to sell short an additional 20,000 shares of NBTY stock at $24.20 per share. Although he was unable to sell

7

short that number of shares at the order price of $24.20, he was able to sell short 10,000 shares at prices between $24.34 and $24.53. This gave Gad a total short position in NBTY stock of 40,000 shares.

37.     On July 22, 2004, Gad also bought an additional 150 August 30 put contracts at $5.92 per contract, which gave him a total position of 200 put contracts.

38.     As noted above, NBTY's third quarter announcement of financial results was made after the close of the market on July 22, 2004.

39.     The following day, July 23, 2004, NBTY stock closed at $19.68 per share, down from the prior day's close of $24.50 per share, losing nearly 20% of its value. Gad's August 30 put contracts increased in value to $10.15 per contract, and his August 20 call contracts, which Gad had sold out of his children's accounts, decreased in value to $1.05 per contract. That same day, Gad closed out his 40,000 share short position, sold all his puts, and repurchased call options in his children's accounts to cover their option sales.

**By Trading Prior to NBTY's 2004 Third Quarter Announcement of Financial Results, Gad Made Approximately $400,000 in Trading Profits and Losses Avoided.**

40.     Gad made approximately $400,000 in trading profits and losses avoided by trading in NBTY securities while he was aware of material, nonpublic information concerning NBTY's financial results.

41.     By selling his entire position of 13,920 shares prior to NBTY's announcement, Gad avoided losses of approximately $73,000 that he would have sustained had he sold after NBTY's public announcement of its 2004 third quarter financial results.

42.     By selling short 40,000 shares prior to NBTY's announcement, Gad made a profit of a little over $200,000 after he closed out his position.

43.     By purchasing 200 put contracts prior to NBTY's announcement, Gad made a profit of approximately $87,000 after he sold his position.

44.     By selling a total of 105 call contracts out of his three children's accounts prior to NBTY's announcement, Gad made a total profit of over $38,000 in his children's accounts after he repurchased the calls.

## CLAIM FOR RELIEF

*The Defendants Violated Section 17(a) of the Securities Act,
Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5,
When Rosenblatt Illegally Tipped Gad, Who Then Traded NBTY Securities*

45.     The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through 44 above.

46.     The Defendants, directly or indirectly, singly or in concert, by the use of the means or instruments of transportation or communication in, or the means or instrumentalities of, interstate commerce, or by use of the mails, or of a facility of a national securities exchange, in the offer or sale, and in connection with the purchase or sale, of NBTY securities: (a) employed devices, schemes, or artifices to defraud; (b) obtained money or property by means of, or otherwise made, untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, acts, practices and courses of business which operated or would have operated as a fraud or deceit upon purchasers of NBTY securities and upon other persons, as more fully described above.

47.     By reason of the activities described herein, the Defendants, singly or in concert, directly or indirectly, violated, and absent an injunction would again violate, Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5.

## RELIEF SOUGHT

**WHEREFORE**, Plaintiff respectfully requests a Final Judgment:

A. Permanently enjoining the Defendants, their officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with them, who receive actual notice of the injunction by personal service or otherwise, and each of them, from future violations of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5;

B. Ordering them jointly and severally to disgorge Gad's trading profits and losses avoided from all of the trading in NBTY securities as set forth herein, and to pay prejudgment interest thereon;

C. Ordering them to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Sections 21(d) and 21A of the Exchange Act, 15 U.S.C. §§ 78u(d)(3), 78u-1;

D.  Ordering that Rosenblatt be barred from acting as an officer or director of a public company pursuant to Section 20(e) of the Securities Act, 15 U.S.C. § 77t(e), and Section 21(d)(2) of the Exchange Act, 15 U.S.C. § 78u(d)(2); and

E.  Granting such other relief as the Court shall deem just and proper.

Dated:  New York, New York
        September 27, 2007

Respectfully submitted,

By:  MARK K. SCHONFELD
Regional Director
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center – Room 400
New York, New York 10281-1022
(212) 336-0175 (Szczepanik)

**Of Counsel:**
Andrew M. Calamari
Valerie A. Szczepanik
Doria Bachenheimer
Meaghan Cheung
Audry Weintrob