UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>- against -<br><br>MORRIS GAD and NATHAN ROSENBLATT,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

07-CV-8385 (GEL)
**ELECTRONIC FILING**

**DEFENDANT NATHAN ROSENBLATT'S
REPLY MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION TO DISMISS**

Thomas Fitzpatrick
500 Fifth Avenue
New York, NY   10110-3398
(212) 930-1290

Attorney for Defendant
   Nathan Rosenblatt

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................ii

POINT I

      THE COMPLAINT FAILS TO SPECIFY WHAT, IF ANY,
      MATERIAL NONPUBLIC INFORMATION CAUSED
      NBTY STOCK TO DECLINE ON JULY 23rd ......................................1

POINT II

      AN INSIDER TRADING CLAIM AGAINST AN INSIDE
      TIPPER REQUIRES "INTENT TO BENEFIT" .....................................4

POINT III

      THE ALLEGED FACTS ARE EQUALLY CONSISTENT
      WITH LAWFUL AND UNLAWFUL CONDUCT ...................................8

CONCLUSION..........................................................................11

i

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Benak v. Alliance Capital Mgmt.*, 349 F.Supp.2d 882 (D.N.J. 2004)........................1

*Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007) ....................................8

*Dirks v. SEC*, 463 U.S. 646 (1983)..............................................................5, 7

*SEC v. Alexander*, 160 F.Supp. 2d 642 (S.D.N.Y. 2001)....................................7

*SEC v. Drescher,* 1999 U.S. Dist. Lexis 16033 (S.D.N.Y. 1999)...........................7

*SEC v. Siebel Systems, Inc.,* 384 F. Supp. 2d 694 (S.D.N.Y. 2005) .....................2, 4

*SEC v. Switzer,* 590 F.Supp. 756 (W.D. Okla. 1984).....................................6, 8

*SEC v. Warde*, 151 F.3d 42, 47 (2d Cir. 1998) ..............................................4, 5

*SEC v. Yun*, 327 F.3d 1263, 1274 n.24 (11th Cir. 2003)..................................6, 7

*United States v. Evans,* 486 F.3d 315, 323-24  (7TH Cir.), *cert denied,*
2007 Lexis 12608, 76 U.S.L.W. 3275 (2007)...............................................8

## POINT I

### THE COMPLAINT FAILS TO SPECIFY WHAT, IF ANY, MATERIAL NONPUBLIC INFORMATION CAUSED NBTY STOCK TO DECLINE ON JULY 23rd

Although the Commission attacks the use of analyst reports in Defendant Morris Gad's Memorandum of Law in Support of his Motion to Dismiss ("Gad's Dismissal Brief"), *see* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Answering Brief" or "SEC's Answering Brief"), pp. 15 *et seq*, the Commission relied on such reports in making its allegations, and its reliance is integral to the complaint. *See* Complaint, ¶ 2 ("[NBTY's reported earnings per share] was significantly lower than Wall Street's earnings per share estimate of $.50") and Complaint, ¶ 22 ("NBTY's revenues were below analysts' already lowered expectations"). Thus, the Commission's claim that it "does not rely on media reports," *see* Answering Brief, p. 15 n. 8, is incorrect. The Commission's attempt to "cherry-pick" which publicly available analyst reports the Court considers should be rejected. *See* *Benak v. Alliance Capital Mgmt.*, 349 F.Supp.2d 882, 889 n.9 (D.N.J. 2004).

Moreover, the Commission's argument that such reports should only be used to determine whether a party is on "inquiry notice" of a fact, *see* Answering Brief at p. 16, is too limiting. The purpose of the proposed use of the documents should be the determining factor. In the complaint, the reports are not being used for their truth but to compare NBTY's actual results to the results expected by analysts.[1] Similarly, Gad's Dismissal Brief uses analyst reports, not for their truth, but to show what information and

---

[1] The Commission relies on additional analyst reports in its Answering Brief. *See* Answering Brief at pp. 19-21 (explaining how analysts responded to NBTY's actual results).

1

opinion was in the marketplace prior to the announcement of NBTY's actual results. Under such circumstances, the reports cited by Gad should be considered on a motion to dismiss. *Cf. SEC v. Siebel Systems, Inc.,* 384 F. Supp. 2d 694 (S.D.N.Y. 2005)(using documents on dismissal motion not for their truth but to determine materiality of disclosed information in Regulation FD case).

   The reports at issue put the materiality and non-public nature of any alleged communications Mr. Gad had with Mr. Rosenblatt into question. As detailed in Gad's Dismissal Brief, NBTY had already disclosed in mid-June 2004 a great deal of negative information that would impact its second quarter results, which were announced after market close on July 22, 2004 (the "July 22nd Announcement"). The Commission concedes that the mid-June announcement had a major impact on the stock, causing it to drop over 26% (from $36.50 to 26.99). *See* SEC's Answering Brief, p. 19 n. 12. The same footnote illustrates that on July 14th, the market reacted negatively again when an analyst covering NBTY published a negative report that simply confirmed NBTY's already announced sales weakness through June 12th. *See id.* and Exhibit 1 to Declaration of Audry Weintrob (stock closed on July 13th at $27.77 and on July 14th at $25.24 – almost a 10% drop). In its July 22nd Announcement after the market close, NBTY confirmed yet again the weakness already disclosed in mid-June, and multiple analysts issued negative reports. *See* Answering Brief, pp. 18-21. The following day, the stock was down between 10% and 20% from the July 22nd close, in sync with the smaller but significant general market decline that day. *See id.* and Exhibit 1 to Declaration of Audry Weintrob.

2

It is in this context – not in a vacuum – that defendants cite the failure of the Commission to identify what "material nonpublic information" Mr. Rosenblatt allegedly tipped to Mr. Gad shortly before the July 22nd Announcement. Indeed, the complaint does not even specify what precise information allegedly caused the actual price decline in NBTY stock on July 23rd. The very analysts cited in the SEC's Answering Brief seem to emphasize different factors in their negative views – including a) "wholesale margin weakness" and the lack of "an indication that the sky wasn't falling," b) "slower sales compounded by weak margins," and c) "the magnitude of the miss and apparent deteriorating trends." *See* SEC Answering Brief, pp. 19-20. Indeed, given the market reaction to a mere analyst report on July 14th, and the fact that on July 23rd NBTY stock opened 10% higher than it closed, *see* Exhibit 1 to Declaration of Audry Weintrob, it is impossible to ascertain whether the market reacted to the "actual financial results" allegedly conveyed to Gad, the multiple analyst reports issued on July 22nd and July 23rd in response to the July 22nd Announcement, or whether additional factors – such as the decline of the entire stock market on July 23rd -- were also in play.[2]

The SEC Answering Brief makes the unfounded assumption that "the precipitous drop of 20% following the [July 22nd Announcement] must have been caused by material, non-public information contained [in the July 22nd Announcement]." *See* SEC Answering Brief, p. 19 n. 12. However, the stock price decline on July 23rd from the July 22nd closing price is insufficient, in itself, to establish the materiality of either the

---

[2] The Declaration of Audry Weintrob attaches 3 analyst reports as Exhibits 2-4. Exhibit 4, a Citigroup/Smith Barney Research Report dated July 22, 2004, is clearly a response to NBTY's earnings announcement. Exhibits 2 and 3, though dated July 23, 2004, appear to have been written before the stock traded on July 23rd, as they use the July 22nd closing price for the price of NBTY stock.

3

July 22nd Announcement or the analyst reports. *See Siebel*, 384 F. Supp. 2d at 707 (stock price movement, while relevant, is not sufficient by itself to establish materiality). Yet the Commission has alleged no further support for its materiality claims.

Moreover, it is a great leap to say that because Gad and Rosenblatt placed calls to each other a few times while Rosenblatt was in possession of NBTY's actual financial results and that Gad subsequently successfully traded the stock, Rosenblatt must have conveyed material nonpublic information to him. Leaving aside the fact that Rosenblatt and Gad, if they spoke at all, could just as plausibly have been talking about the imminent social occasion they planned to spend together,[3] it is not detectable from the complaint what specific information Rosenblatt even *could* have conveyed that was both nonpublic and that caused the stock decline. *See Siebel*, 384 F. Supp. 2d at 707 (mere fact that analysts may have considered insider's private statements significant is not sufficient to establish that information was material). Under these circumstances, the Complaint should be dismissed.

## POINT II

### AN INSIDER TRADING CLAIM AGAINST AN INSIDE TIPPER REQUIRES "INTENT TO BENEFIT"

The Commission contends that "[t]he parties do not dispute what is required to state a claim for insider trading." SEC Answering Brief, p. 14. However, the elements set forth by the Commission, as enunciated in *SEC v. Warde*, 151 F.3d 42, 47 (2d Cir. 1998), state the allegations necessary for a claim against a *tippee,* and therefore gloss

---

[3] See Complaint, ¶30-35 (Phone calls between Gad and Rosenblatt occurred on morning and early afternoon of July 21st, while later they spent the evening together at a small dinner party to celebrate the birthday of a mutual friend.)

4

over the requirement that the tipper must have breached a fiduciary or other duty of trust,

which in turn, depends on the tipper's *purpose* in disclosing the information.

To state a claim against Mr. Rosenblatt, an alleged inside *tipper,* there must be

an allegation that he breached his fiduciary duty because he *intended to benefit* from

tipping the inside information to Mr. Gad. *See Dirks v. SEC*, 463 U.S. 646 (1983); *see

also Warde*, 151 F. 3d at 48 (benefit requirement satisfied when tipper intends to benefit

tippee or makes gift of confidential information to trading friend or relative). Also

absent from the necessary elements cited by the Commission for an insider trading case

against a *tipper* is Mr. Rosenblatt's scienter, an element separate from the intent-to-

benefit requirement. *See Dirks,* 463 U.S. at 664 n.23.

The only allegation in the complaint touching on Mr. Rosenblatt's scienter and

intent-to-benefit is found in Paragraph 32:

> "Rosenblatt intentionally or recklessly, for his own direct or indirect
> benefit...conveyed material nonpublic information about NBTY's third
> quarter financial results to his close friend Gad." Complaint, ¶ 32.

Scienter and breach of fiduciary duty are essential but separate elements of an

insider trading case. As the Supreme Court has stated:

> Scienter – 'a mental state embracing intent to deceive, manipulate or
> defraud' – is an *independent* element of a Rule 10b-5 violation...The issue
> in this case is not whether Secrist or Dirks acted with scienter, but rather
> whether there was any deceptive conduct at all, i.e., whether Secrist's
> disclosure constituted a breach of his fiduciary duty and thereby caused
> injury to shareholders. Only if there was such a breach did Dirks, a tippee,
> acquire a fiduciary duty to disclose or abstain." *Dirks,* 463 U.S. at 664, n.
> 23 (citations omitted)(emphasis added).

The *Dirks* court explained that whether an insider breaches his fiduciary duty when

disclosing material nonpublic information depends on the *purpose* of the disclosure:

5

> [I]t may not be clear – either to the corporate insider or to the recipient analyst – whether the information will be viewed as material nonpublic information. *Corporate officials may mistakenly think the information has been disclosed or that it is not material enough to affect the market.* Whether disclosure is a breach of duty therefore depends in large part on the *purpose* of the disclosure." *Id.* at 662 (emphasis added).

There is no allegation of an improper purpose in the complaint. An improper purpose would be found when "the insider receives a direct or indirect personal benefit from the disclosure, such as a pecuniary gain or a reputational benefit." *Id.* at 663. Although a gift of confidential information to a friend could qualify as a personal "benefit," *see id.* at 664, accidental or even reckless disclosure is not a "gift," even if the recipient happens to benefit from it. *See SEC v. Switzer,* 590 F.Supp. 756, 766 (W.D. Okla. 1984).

Thus, we respectfully submit that a tipper cannot intend to benefit himself, directly or indirectly, when his disclosure is reckless rather than intentional. At least one Circuit Court – the 11th – agrees. *See SEC v. Yun*, 327 F.3d 1263 (11th Cir. 2003). In *Yun*, the SEC brought an insider trading case against Ms. Donna Yun and her alleged tippee. At trial, the SEC presented evidence that Ms. Yun discussed material nonpublic information on an office phone call with her divorce attorney. (She had obtained the information from her husband, a corporate insider, who asked her to keep it confidential but assumed she would discuss it with her attorney.) Ms. Yun's business associate overheard Ms. Yun discussing the inside information with her attorney and there was some evidence that he may have discussed it further with her that evening at a social gathering. He then traded on the information.[4]

---

[4] Interestingly, the original complaint in *Yun* was dismissed for failure to state a claim, and the District Court directed that if the SEC elected to file an amended complaint, "…it should state the facts supporting

6

At trial, the SEC contended that "…it did not have to prove that Ms. Yun divulged the information for her own benefit. The trial court agreed that "…all [the SEC] had to do to show…a breach of loyalty and confidentiality was that Donna [Yun] acted with 'severe recklessness,' "" and rejected Ms. Yun's proposed jury instruction that "[t]he disclosure has to be for the fiduciary's personal benefit to constitute a breach." *Id.* at 1280. The jury found for the SEC.

The Circuit remanded for a new trial because the permitted *recklessness* instruction "*foreclosed* [the tipper and tippee's attorneys] from arguing that the jury could not find against their clients unless they found that Donna tipped Burch for her personal benefit." *Id.* at 1282 n.41 (emphasis added). In other words, the *Yun* court found that *reckless* disclosure is simply incompatible with a disclosure made with "intent to benefit."[5]

As the *Yun* court makes clear, there can be no reckless conveyance of information with a simultaneous intent to benefit. For example, if Mr. Rosenblatt were reckless in not knowing whatever information he allegedly conveyed was not public – a strong possibility here given the amount of negative information already out in the public domain – then he could not have thought he was "gifting" any information to Mr. Gad. *See Dirks* at 662 ("[c]orporate officials may mistakenly think the information already has

---

its [allegation] that Donna Yun acted for her direct or indirect benefit when she disclosed the confidential information related to her by her husband." *Yun,* 327 F.3d at 1274 n.24. The SEC filed an amended complaint that added such allegations, including that Donna was aware her tippee would trade on the disclosed information.

[5] We are aware of at least one district court case that upheld allegations of an insider tipper's recklessness in not knowing that her tippees would trade on the inside information she disclosed. *See SEC v. Alexander,* 160 F.Supp. 2d 642 (S.D.N.Y. 2001). However, in *Alexander,* the court failed to address the "intent to benefit" issue and only evaluated whether the tipper's recklessness satisfied the scienter requirement. *See id.* at 650-51. *See also SEC v. Drescher,* 1999 U.S. Dist. Lexis 16033 (S.D.N.Y. 1999)(allegations of reckless disclosure and reckless disregard of whether tippees would trade on information sufficiently pled tipper scienter).

7

been disclosed or that it is not material…").   Alternatively, if Mr. Rosenblatt were to

have said or indicated something inadvertently that Mr. Gad could have taken advantage

of, no intent to benefit existed.  *See Switzer,* 590 F. Supp. at 766 (no tipper liability for

corporate insider's disclosure to wife at track meet that was overheard and traded on by

friendly acquaintance).  Moreover, even if Mr. Rosenblatt's disclosure were intentional,

if he did not know it was improper, the requisite intent did not exist.  *United States v.*

*Evans,* 486 F.3d 315, 323-24 (7th Cir.), *cert. denied*, 2007 Lexis 12608, 76 U.S.L.W.

3275 (2007)(tipper who disclosed detailed information to friend may have acted

negligently rather than willfully or knowingly).


## POINT III

### THE ALLEGED FACTS ARE EQUALLY CONSISTENT WITH
### LAWFUL AND UNLAWFUL CONDUCT

As pointed out in Gad's Dismissal Brief, plaintiff must set forth grounds upon

which its claim rests by making factual allegations sufficient to "raise a right to relief

above the speculative level."  *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007).

The SEC claims that "[t]his is not a case like the one at issue in *Twombly,* where the

Court was asked to infer unlawful conduct from facts that were just as consistent with

lawful conduct as unlawful conduct."  SEC Answering Brief, p. 14 n.7.  We respectfully

disagree.

First, as demonstrated in Point I, there are insufficient allegations to support the

inference that the July 22nd announcement itself, rather than analysts' reaction to it or

other additional factors such as the general market decline on July 23rd, triggered the

price decline in NBTY stock on July 23rd.  In the context of NBTY's warning a month

8

earlier and a negative analyst report one week prior to the July 22nd Announcement, there is insufficient identification of what material nonpublic information Mr. Rosenblatt could have conveyed to Mr. Gad that made Mr. Gad's decision to sell NBTY stock the product of insider trading rather than the product of impressions based on publicly available information and perhaps the private but lawful disclosures by a friend.

Second, as demonstrated in Point II above, even if Mr. Rosenblatt conveyed some material nonpublic information to Mr. Gad, if he did so negligently or even recklessly, then his conduct was not unlawful.

There are no factual allegations that support an inference that Mr. Rosenblatt intended to benefit Mr. Gad. There is no factual allegation that Mr. Gad conferred any tangible or intangible benefit on Mr. Rosenblatt in exchange for the alleged tip. The complaint mentions the allegedly close friendship between Gad and Rosenblatt in Paragraphs 1, 16 and 32. The only details of the relationship, however, are briefly set forth in Paragraph 16:

> Gad and Rosenblatt have been good friends for many years. They live close to each other, speak, to and see each other frequently, and vacation together with their families. Compl. ¶ 16.

There is no allegation that Mr. Rosenblatt and Mr. Gad ever had business dealings or discussed their respective businesses or investments with each other. There is no allegation that Mr. Rosenblatt knew anything about Mr. Gad's stock trading activities – in NBTY or any other stock – or had any reason to believe Mr. Gad would trade in NBTY stock. There are no allegations that the frequency or timing of the alleged communications or attempted communications between Mr. Gad and Mr. Rosenblatt were in any way unusual, nor is there an allegation that Mr. Gad's trades were

9

aberrational.   Moreover, from the face of the complaint itself, it is just as plausible that Mr. Gad and Mr. Rosenblatt spoke on July 21st to discuss arrangements for the dinner party they intended to attend that evening as it is that they discussed NBTY financial results.

In sum, there are alleged communication attempts between Mr. Gad and Mr. Rosenblatt occurring around the same time as Mr. Gad's trades in NBTY stock and an imminent NBTY earnings announcement.   Even if we assume that communications occurred and that whatever Mr. Rosenblatt said to Mr. Gad triggered Mr. Gad's trading, there are NO allegations (other than the conclusory boilerplate allegation of intent in Paragraph 32 of the complaint) that support the inference that Mr. Rosenblatt intended to confer a gift of trading information to Mr. Gad.

Therefore, the complaint fails to meet the requirements of Rules 12(b)(6) and 9(b).

10

**CONCLUSION**

For the reasons stated above, and for the reasons stated in Mr. Gad's

Memorandum of Law, the complaint against Mr. Rosenblatt must be dismissed.

Dated:    December 5, 2007
          New York, New York

                                    Respectfully submitted,

                              By: _____
                                    Thomas Fitzpatrick
                                    500 Fifth Avenue
                                    New York, NY   10110
                                    (212) 930-1290

                              *Attorney for Defendant Nathan Rosenblatt*

11